**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | ) Chapter 7 |
| | ) |
| **KW International, LLC,** | ) Case No. 23-90708 (CML) |
| | ) |
| | ) |
| **Debtor.** | ) Re: Docket No. 206 |
| | ) |

**OBJECTION AND RESERVATION**
**OF RIGHTS OF EP ENERGY E&P COMPANY, LLC**
**TO STIPULATION AND AGREED ORDER REGARDING**
**PROCEEDING IN THIS CASE AND RELIEF FROM THE AUTOMATIC STAY**

EP Energy E&P Company, LLC, f/k/a EP Energy E&P Company L.P. ("**EP Energy**"), on behalf of itself and its affiliates, including Verdun Oil Company ("**Verdun**" and, together with EP Energy, the "**EP Parties**"), by and through its undersigned counsel, hereby files this objection and reservation of rights (this "**Objection**") to the proposed *Stipulation and Agreed Order Regarding Proceeding in This Case and Relief From the Automatic Stay*, dated August 24, 2023 [Docket No. 206] (the "**Proposed Stipulation**"),[1] filed by the chapter 7 trustee (the "**Trustee**"), and respectfully states as follows:

**OBJECTION AND RESERVATION OF RIGHTS**

1. Since becoming aware of the Debtor's chapter 11 case and especially post-conversion to chapter 7, EP Energy has been actively involved in this bankruptcy case.[2] EP Energy has engaged in ongoing discussions with the Trustee and other parties in interest.[3] These

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Proposed Stipulation.

[2]   Based on its review of the docket, it does not appear that either EP Energy or Verdun received formal notice of the Debtor's bankruptcy case.  *See* Docket Nos. 2, 65, 111, 112, 136, 185, 186.

[3]   On August 3, 2023, EP Energy filed the *Notice of Appearance and Request for Notices and Service Papers*

communications have been generally constructive and helpful in bridging the information gap the EP Parties have faced with respect to the status of certain property the EP Parties may own or have an interest in (the "**EP Property**").  However, following an inspection that occurred earlier today, the EP Parties believe that more work needs to be done to catalogue all of the EP Property.[4]  The EP Parties intend to continue to work with the Trustee and other parties in interest to locate the EP Property.

2.      Based on statements made at the status conference held on August 17, 2023, EP Energy understood that (i) parties in interest would have an opportunity to review and object to any proposed stipulation once finalized and (ii) the proverbial "too many cooks in the kitchen" had prevented the Parties from coming to an agreement.  In the late afternoon of August 22, 2023—less than one full day before the status conference scheduled for the morning of August 23, 2023 (the "**August 23 Status Conference**")—EP Energy received the text of a single paragraph from a draft of the Proposed Stipulation.  At the August 23 Status Conference, the Court directed, among other things, that the Parties provide the latest draft of the Proposed Stipulation to EP Energy.

3.      Yesterday afternoon, the Trustee sent a draft of the Proposed Stipulation to EP Energy, which the EP Parties promptly began reviewing and analyzing.  EP Energy sent preliminary revisions to the Proposed Stipulation at approximately 2:05 p.m. this afternoon—well in advance of the 5:00 p.m. filing deadline set by the Court.  Unfortunately, shortly after receiving EP Energy's preliminary revisions, the Trustee advised that any issues would be addressed by the Court at the status conference scheduled for August 28, 2023 (the "**August 28 Status**

---

[Docket No. 180] (the "**Notice of Appearance**").  However, EP Energy initiated discussions with counsel for the Trustee prior to filing the Notice of Appearance.

[4]      Yesterday, following multiple requests beginning on or around August 2, 2023, EP Energy obtained the Trustee's and Crossroad's consent to conduct a supervised inspection of EP Property located at the manufacturing facility.

**Conference**") and, thereafter, filed the Proposed Stipulation.  EP Energy simply was not afforded an opportunity to meaningfully engage and negotiate with the Parties regarding the Proposed Stipulation.  As a result, EP Energy is forced to file this Objection to preserve the EP Parties' rights with respect to the Proposed Stipulation and the EP Property.

4.      EP Energy does not believe that its proposed revisions are controversial.[5]  First, EP Energy seeks to incorporate certain language intended to protect customers' rights under both Chapter 2 and Chapter 9 of the Texas Business and Commerce Code (the "**Protective Language**").  Specifically, the Protective Language clarifies existing language already included in Paragraph 20 of the Proposed Stipulation by (i) ensuring that any ownership or special property interests are not altered, impaired, or otherwise terminated by virtue of the Secured Creditors' taking "possession" of purported collateral and (ii) foreclosing arguments that such ownership or special property interests have terminated on account thereof.  The Protective Language merely serves to protect customers' rights and does not appear to be at odds with the intent of the Proposed Stipulation.

5.      Second, EP Energy seeks inclusion of a standalone paragraph specific to the EP Parties, which contains a "good faith" and "prompt[ness]" requirement with respect to locating and cataloguing EP Property that has been "paid for," but is otherwise intended to be consistent with the last sentence of Paragraph 20 of the Proposed Stipulation (the "**EP-Specific Paragraph**").  EP Energy believes that the EP-Specific Paragraph is both reasonable and necessary because, among other things, (i) the docket indicates that EP Energy and Verdun were neither provided with formal notice of the bankruptcy case nor listed in the Debtor's creditor

---

[5]    A redline reflecting the latest draft of EP Energy's proposed revisions marked against the Proposed Stipulation is annexed hereto as **Exhibit A**.

matrix, master service lists, statement of financial affairs, and schedules of assets and liabilities, (ii) it took approximately three weeks following its initial request for EP Energy to receive authorization to inspect the EP Property at the manufacturing facility, and (iii) more work must be done to catalogue all of the EP Property.

6.      For these reasons, the Proposed Stipulation should not be entered absent the inclusion of the Protective Language and the EP-Specific Paragraph.  Notwithstanding the filing of this Objection, EP Energy intends to work collaboratively with the Trustee and other parties in interest to resolve this Objection in advance of the August 28 Status Conference.  However, EP Energy reserves all of its rights to object to the Proposed Stipulation on any basis whatsoever, either prior to or at the August 28 Status Conference, including, but not limited to by filing a supplement to this Objection, and to seek any other appropriate relief.

Dated: August 24, 2023          Respectfully submitted,
       Houston, Texas

                                  /s/  Alfredo R. Pérez
                                 Alfredo R. Pérez (15776275)
                                 Clifford Carlson (24090024)
                                 Theodore S. Heckel (24133488)
                                 **WEIL, GOTSHAL & MANGES LLP**
                                 700 Louisiana Street, Suite 1700
                                 Houston, Texas  77002
                                 Telephone: (713) 546-5000
                                 Facsimile:  (713) 224-9511
                                 Emails: Alfredo.Perez@weil.com
                                         Clifford.Carlson@weil.com
                                         Theodore.Heckel@weil.com

                                 *Counsel for EP Energy E&P Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 24, 2023, a true and correct copy of the foregoing Objection and Reservation of Rights of EP Energy E&P Company, LLC to Stipulation and Agreed Order Regarding Proceeding In This Case and Relief From the Automatic Stay was served by e-mail on the parties who receive electronic notice in this case pursuant to the Court's ECF filing system.


        */s/  Alfredo R. Pérez*
        Alfredo R. Pérez

**<u>Exhibit A</u>**

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **KW INTERNATIONAL, LLC,** | ) | **Case No. 23-90708** |
| | ) | |
| Debtor. | ) | |

**STIPULATION AND AGREED ORDER REGARDING PROCEEDING IN THIS CASE**
**AND RELIEF FROM THE AUTOMATIC STAY**

This Stipulation and Agreed Order (this "**Stipulation and Agreed Order**") is entered into between and among (i) Janet S. Northrup, the appointed Chapter 7 Trustee in the above-referenced bankruptcy case (the "**Trustee**"), (ii) Crossroads Funding II, LLC, successor by assignment from Crossroads Financing, LLC ("**Crossroads**"), (iii) Utica Leaseco, LLC ("**Utica**"), (iv) nFusion Capital Finance, LLC ("**nFusion**"); and (v) 200 Texas LLC (the "**Columbus Landlord**", and collectively with the Trustee, Crossroads, Utica, and nFusion, the "**Parties**").

**RECITALS**

A.      WHEREAS, on June 6, 2023 (the "**Petition Date**"), KW International, LLC (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code;

B.      WHEREAS, the Debtor had obtained several interim orders for use of Crossroads' cash collateral and nFusion's cash collateral, most recently the *Third Interim Order Granting Debtor's Emergency Motion for (i) Interim and Final Orders (a) Authorizing Debtor to Incur Post-Petition Secured Indebtedness, (b) Granting Security Interests and Super-priority*

1

*Claims, and (c) Authorizing the Use of Cash Collateral and Granting Adequate Protection; and (ii) an Order Scheduling a Final Hearing* [Docket No. 141] and the *Third Interim Order Granting Debtor's Emergency Motion for (I) Interim and Final Orders (A) Authorizing the Debtor to Factor and Incur Post-Petition Secured Indebtedness, (B) Granting Security Interests and Super-Priority Claims, and (C) Authorizing Use of Cash Collateral and Granting Adequate Protection; and (II) an Order Scheduling a Final Hearing* [Docket No. 143], each entered on July 19, 2023 (collectively the "**Cash Collateral Orders**");

C.     WHEREAS, on July 28, 2023 (the "**Conversion Date**"), this Court entered an order granting the Debtor's Emergency Motion to Convert Case, and converted the above-referenced bankruptcy case to a Chapter 7 liquidation;

D.     WHEREAS, the Trustee was subsequently appointed, engaged proposed counsel and commenced performing her duties to administer the Debtor's bankruptcy estate (the "**Estate**");

E.     WHEREAS, on March 3, 2022, the Debtor and Crossroads entered into that certain Loan and Security Agreement, as subsequently amended on April 4, 2023, that certain Intellectual Property Security Agreement dated March 4, 2022, certain guaranties by the Debtor's management, and certain UCC-1 financing statements that were filed evidencing the liens granted by the Debtor on Crossroad's collateral, including the UCC-1 Financing Statement recorded on January 6, 2022 with file number ending in 814128, among other loan documents (collectively, the loan documents identified above are referred to as the "**Crossroads Loan Documents**");

2

F.      WHEREAS, as security for the Crossroads Loan Documents, the Debtor granted to Crossroads liens on the collateral identified in the Crossroads Loan Documents (the "**Crossroads' Collateral**"), which includes all assets of the Debtor, but which Crossroads' Collateral excludes, for purposes of the Debtor's bankruptcy case, assets in which Crossroads does not have a valid and perfected security interest, such as real estate, Chapter 5 causes of action, and the proceeds of the foregoing;

G.      WHEREAS, on or about March 4, 2022, the Debtor and Utica entered into a Master Lease Agreement through which Utica leased to the Debtor certain Equipment and other collateral (the "**Utica Collateral**") identified in various Equipment Schedules, riders and Exhibits as defined and incorporated in the Master Lease Agreement (the "**Utica Documents**"), but which Utica Collateral excludes, for purposes of the Debtor's bankruptcy case, assets in which Utica does not have a valid and perfected ownership or security interest, such as real estate, Chapter 5 causes of action, and the proceeds of the foregoing. For purposes of the Debtor's bankruptcy case, Utica will not assert an interest in certain Collateral for which Utica imposed a "Missing Title Holdback" in connection with the funding under the Master Lease Agreement, it being understood and agreed that the Missing Title Holdback funds in the amount of $157,466.00 are not property of the Estate and shall be retained by Utica, and the assets for which Utica imposed the Missing Title Holdback are property of the Estate and are free and clear of any lien, claim, charge, or encumbrance by Utica;

H.      WHEREAS, on or about March 4, 2022, the Debtor and nFusion entered in that certain Accounts Receivable Purchasing Agreement (the "**nFusion Factoring Agreement**"), a

3

separate Security Agreement, and other related financing documents and instruments providing for the discounted purchase and sale of the Debtor's eligible accounts receivable with full recourse to the Debtor (all such documents collectively, the "**nFusion Documents**")[1];

I.   WHEREAS, to secure its obligations under the nFusion Documents, the Debtor granted to nFusion a security interest in substantially all of its assets, including all of the Debtor's personal property and a first-priority lien on the Owned Real Estate (all such collateral being  referred to herein as the "**nFusion Collateral**"), but which nFusion Collateral excludes, for purposes of the Debtor's bankruptcy case, assets in which nFusion does not have a valid and perfected security interest, such as Chapter 5 causes of action and the proceeds thereof;

J.   WHEREAS, the Debtor entered into a certain Lease Agreement, dated September 28, 2018 (as amended, the "**Columbus Lease Agreement**"), with the Columbus Landlord, as landlord, and the Debtor, as tenant, for the premises located at 200 Texas Avenue, Columbus, Texas, as more fully described in the Columbus Lease Agreement (the "**Columbus Leased Premises**");

K.   WHEREAS, on March 3, 2022, the Columbus Landlord, Crossroads, and Utica entered into that certain Landlord Agreement (the "**Landlord Agreement**"), providing for the terms and conditions under which the Columbus Landlord would permit Crossroads and Utica to use the Columbus Leased Premises to liquidate their respective collateral or leased property;

---

[1] The nFusion Documents include a real estate lien note in the original principal amount of $400,000, and a related deed of trust and other security instruments, each dated March 25, 2022. The real estate loan was contemplated at the time the nFusion Factoring Agreement was executed, and the obligations are cross-collateralized. The subject real estate is a vacant parcel of land owned by the Debtor adjacent to its Columbus, Texas facility (the "**Owned Real Estate**").

4

L.      WHEREAS, on March 4, 2022, the Debtor entered into two intercreditor agreements: (a) an Intercreditor Agreement and Amendment among the Debtor, Crossroads, Utica, and nFusion, which, generally speaking, provides for the relative priority of the Utica Collateral as against Crossroads and nFusion (the "**Utica Intercreditor Agreement**") and (b) an *Intercreditor Agreement* among the Debtor, Crossroads, and nFusion (the "**Crossroads/nFusion Intercreditor Agreement**") which, generally speaking, provides for the relative priority of the Crossroads Collateral and the nFusion Collateral;

M.      WHEREAS, the Utica Intercreditor Agreement and the Crossroads/nFusion Intercreditor Agreement are referred to herein as the "**Intercreditor Agreements**";

N.      WHEREAS, Crossroads, Utica, and nFusion (collectively, the "**Secured Creditors**") wish to proceed, as agreed to among the Parties, to exercise their respective rights and remedies in accordance with the Crossroads Loan Documents, the Utica Documents, and the nFusion Documents;

O.      WHEREAS, the Columbus Landlord wishes to proceed, as agreed to among the Parties, to exercise its rights and remedies in accordance with the Columbus Lease Agreement and the Landlord Agreement;

P.      WHEREAS, the Columbus Landlord represents to the Trustee that it is not in possession or control of any of the Books and Records (as defined below) that are property of the Estate, and acknowledges that the Trustee is acting in reliance on this representation by not requiring the Columbus Landlord to be bound by the "Preservation/Access Covenants" (as defined below); and

5

Q.      WHEREAS the Parties have come to the agreement below, which the Parties believe is in the best interests of the Estate, and wish to proceed as expeditiously as possible, all as further set forth below.

### STIPULATION AND AGREED ORDER

**NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING, THE PARTIES HEREBY AGREE AND STIPULATE, AND IT IS ORDERED, AS FOLLOWS:**

1.      The foregoing recitals are incorporated herein by reference as if set forth in full herein and are made an express part of this Stipulation and Agreed Order.

2.      Upon entry of this Stipulation and Agreed Order, the automatic stay pursuant to 11 U.S.C. § 362 is hereby terminated to permit: (i) Crossroads to proceed with its rights and remedies under the Crossroads Loan Documents with respect to the Crossroads' Collateral only, including the repossession of collateral on which Crossroads has a valid and perfected security interest and subsequent sale, (ii) Utica to proceed with its rights and remedies under the Utica Documents with respect to the Utica Collateral only, including the repossession of the Utica Collateral as set forth in the Utica Documents and the subsequent sale thereof, and (iii) nFusion to proceed with its rights and remedies under the nFusion Documents with respect to the nFusion Collateral only, save and except the Owned Real Estate, including but not limited to (A) the repossession of the nFusion First-Priority Collateral (as defined in paragraph 4 hereof); and (B) the delivery of the nFusion First-Priority Collateral to customers of the Debtor in return for (or as a condition to) payment of accounts receivable owned by nFusion or in which nFusion holds a first-priority security interest[2]; *provided, however*, that (x) nothing herein shall constitute relief

---

[2] Pursuant to the Cash Collateral Orders and the order of conversion, the automatic stay has already been modified to permit nFusion to collect purchased and non-purchased accounts receivable directly from the Debtor's customers.

6

from the stay as to the Owned Real Estate; and (y) any delivery to customers shall be performed in accordance with paragraph 20 of this Stipulation and Agreed Order and the Access Agreement (as defined in paragraph 4 hereof).

3.      Columbus Landlord will allow Crossroads, Utica, the Trustee, and the Trustee's representatives (including but not limited to attorneys, accountants, and auctioneers; the "**Trustee's Representatives**") access to the Columbus Leased Premises, at no cost to the Estate and upon reasonable request, during the time Crossroads and Utica are removing or disposing of the Crossroads' Collateral and the Utica Collateral, respectively (the "**Liquidation Period**"), consistent with the terms provided for in the Columbus Lease Agreement and the Landlord Agreement.

4. nFusion shall have limited access to the Columbus Leased Premises pursuant to an access agreement with the Columbus Landlord  (the "**Access Agreement**"), which Access Agreement shall be executed and delivered to the Columbus Landlord and acknowledged by Crossroads prior to the removal of the nFusion Collateral from the Columbus Leased Premises.  Generally speaking, the Access Agreement contemplates that (a) nFusion and Crossroads shall jointly coordinate the disposition of any physical assets in which nFusion holds the first-priority security interest (the "**nFusion First-Priority Collateral**"); (b) any physical relocation or removal of the nFusion First-Priority Collateral shall be conducted by Crossroads and in accordance with the

---

permit nFusion to collect purchased and non-purchased accounts receivable directly from the Debtor's customers. See Docket No. 143 ¶ 8; Docket No. 170 ¶ 5. The supplemental relief from stay granted to nFusion herein allows nFusion to exercise its rights with respect to its other collateral, save and except the Owned Real Estate, including but not necessarily limited to inventory and work-in-progress ("**WIP**"), some of which is or may be subject to nFusion's first-priority lien under the applicable Intercreditor Agreements.  nFusion anticipates that some or all of such first-lien collateral will be disposed of by delivering it to the Debtor's customers in return for payment of the corresponding invoices.

506934699.3￪0 1205615-00006
WEIL:\99311509\4\42780.0005

Landlord Agreement; (c) nFusion will access the Columbus Leased Premises only for the purpose of coordinating with Crossroads and identifying, labeling, photographing and cataloguing the nFusion First-Priority Collateral; and (d) protects the Columbus Landlord against, among other things, damage to or personal injury on the Columbus Leased Premises. Notwithstanding anything to the contrary in this Stipulation and Agreed Order or the Access Agreement, Crossroads shall follow the reasonable instructions of nFusion with respect to any disposition, removal or other relocation of the nFusion First-Priority Collateral.

5.      During the Liquidation Period, at no cost to the Estate, with advance notice to Crossroads, Utica, and the Columbus Landlord, the Trustee will be allowed to remove from the Columbus Leased Premises property of the Estate in which no Secured Creditor has a valid and perfected security interest (collectively, the "**Unencumbered Assets**"). The Trustee acknowledges and agrees that the Executive Office Personal Property (as defined in the Trustee's Expedited Motion to Sell [Docket No. 201]) to be sold at auction by Tranzon Asset Advisors of Texas, LLC ("**Tranzon**") is not located on the Columbus Leased Premises.  No Party shall hinder, delay, or interfere with removal of any Unencumbered Asset from the Columbus Leased Premises. With respect to the Columbus Leased Premises only, Tranzon, by the signature of its authorized representative below, will (i) indemnify and hold harmless the Columbus Landlord for any damage to the Columbus Leased Premises caused by Tranzon's removal of Unencumbered Assets from the Columbus Leased Premises, or personal injury suffered by Tranzon or any of its employees, independent contractors, or invitees at or upon the Columbus Leased Premises; and (ii) execute and deliver to the Columbus Landlord an access agreement

8

(the "**Tranzon Access Agreement**") in the form attached as <u>Exhibit "A"</u> hereto. The indemnities herein and the obligations in the Tranzon Access Agreement are solely obligations of Tranzon to the Columbus Landlord, and are not obligations binding upon the Trustee or the Estate. The signature below of Tranzon's authorized representative is solely to evidence its agreement to the indemnifications and the execution of the Tranzon Access Agreement in this paragraph, and Tranzon is not otherwise a Party to, nor bound by, the terms of this Stipulation and Agreed Order.

6.      Crossroads and Utica will pay via wire transfer to the Columbus Landlord the amount of $162,802.98, which constitutes the base rent of $128,248.10, the deferred component of the rent made a part of the monthly rental amount set forth in the Columbus Lease of $16,209.57 (the "**Deferred Rent**")[3], and the monthly ad valorem taxes of $18,345.31 under the Columbus Lease for the month of August 2023, and any and all other charges and costs provided for under the Columbus Lease or assessed by the Columbus Landlord under the terms of the Columbus Lease, on account of the occupancy and use of the Columbus Leased Premises, in accordance with the terms and conditions of the Columbus Lease (the "**Post-Petition Rent Charges**") once this Stipulation and Agreed Order is entered by this Court. Crossroads and Utica will abide by the terms of the Landlord Agreement and pay all such amounts as required thereunder following the Columbus Landlord's termination of the Debtor's leasehold interest in the Columbus Leased Premises, which shall be effective upon the entry of this Stipulation and

---

[3] This provision does not in any manner affect or impair the rights of (i) Crossroads or Utica to object to the amount of the Deferred Rent or claims by the Columbus Landlord to the Deferred Rent, as the Columbus Landlord asserts in the Landlord Agreement; or (ii) the Trustee to object to the amount of the Deferred Rent or claims by the Columbus Landlord to the Deferred Rent, as the Columbus Landlord maintains is owing under the Columbus Lease.

Agreed Order, without further notice or action by the Columbus Landlord, whereupon the Columbus Landlord will be deemed to be in possession of the Columbus Leased Premises; provided however, to the extent that there is a disagreement as to the amount payable under the Landlord Agreement, Crossroads and Utica reserve the right to object to same, which dispute shall be resolved by this Court. Crossroads and Utica are paying the Deferred Rent each month to the Columbus Landlord under protest and reserve the right to seek an order from the Court that the Deferred Rent, in whole or in part, does not constitute Post-Petition Rent Charges and should be returned to Crossroads and Utica. The Columbus Landlord maintains that all such rent is required to be paid under the Landlord Agreement. As between the Columbus Landlord, on the one hand, and Crossroads and Utica, on the other hand, nothing herein shall in any way impair, alter, or amend the terms and conditions of the Landlord Agreement, including the right of the Columbus Landlord, Crossroads or Utica to enforce the Landlord Agreement on account of any breach of same by Crossroads, Utica, or the Columbus Landlord and to seek damages for breach thereof as may be appropriate and attorneys' fees (as may be allowed under applicable law).  To the extent any right, remedy, or provision of the Landlord Agreement or the Columbus Lease Agreement conflicts with the terms of this Stipulation and Agreed Order, this Stipulation and Agreed Order controls and prevails.

7.      Crossroads, Utica, and the Columbus Landlord will abide by the terms of the Landlord Agreement.

8.      If any Books and Records (as defined below) are in possession or control of the Secured Creditors, the Secured Creditors shall not alter, remove, delete, or destroy any books or

10

records of the Debtor that are property of the Estate (the "**Books and Records**"), including but not limited to the Books and Records related to Crossroads' Collateral, the Utica Collateral, and the nFusion Collateral, without prior written approval of the Trustee.  Notwithstanding the limitation to the Liquidation Period set out above for access by the Trustee and the Trustee's Representatives to other property of the Estate, the Secured Creditors will maintain the Books and Records in their possession or control, and will allow the Trustee and the Trustee's Representatives access to the Books and Records at all times, upon reasonable request, unless the Trustee gives written approval otherwise.  The obligations of the Secured Creditors with respect to the Books and Records set forth in this paragraph are collectively the "**Preservation/Access Covenants**".

9.      To the extent there is no, or minimal, cost to the Estate, and further to the extent any applicable privilege can be maintained, the Trustee will cooperate reasonably with the Secured Creditors for inspection and review of the Books and Records by the Secured Creditors, and their respective officers, agents, attorneys, employees and representatives, upon reasonable request.  To the extent there is no, or minimal, cost to the Estate, and further to the extent any applicable privilege can be maintained, the Trustee will cooperate with the Columbus Landlord to access information reasonably requested by the Columbus Landlord in connection with its efforts to relet the Columbus Leased Premises following the Liquidation Period.  Crossroads and Utica shall reasonably cooperate with the Columbus Landlord to provide to the Columbus Landlord information helpful or useful in connection with the ability of the Columbus Landlord to relet the Columbus Leased Premises following the Liquidation Period.

11

10.     Crossroads will pay MyITology ("**Database Company**") to preserve and maintain the Books and Records maintained by or under the control of or in the possession of Database Company for a period of three months from the Conversion Date, with the option to extend that period further as needed.  Crossroads will instruct Database Company to make such Books and Records available to the Trustee and the Trustee's Representatives, at no cost to the Estate, for any purpose, including but not limited to investigation and prosecution of chapter 5 avoidance actions, upon reasonable request.

11.     Nothing contained in this Stipulation and Agreed Order shall act as or be construed as an assumption of any Lease.

12.     Except for the reservation of the rights of the Columbus Landlord to seek payment of its Post-Petition Rent Charges and its post-petition attorneys' fees from and after the Petition Date in connection with the enforcement of its rights and remedies under the Columbus Lease Agreement, the Columbus Landlord waives and releases all remaining claims against the Estate that may be entitled to administrative priority under 11 U.S.C. §507(a)(2).

13.     The Secured Creditors each reserve the right to file a claim against the Estate that asserts the Secured Creditors may be entitled to administrative priority under 11 U.S.C. §507(a)(2), save and except any claim based on the Secured Creditors' payment of the Post-Petition Rent Charges. The Secured Creditors each waive and release all claims against the Estate arising from or related to their payment of the Post-Petition Rent Charges. Nothing in this Stipulation and Agreed Order shall waive, restrict or impair the rights of the Trustee or any

12

party-in-interest to object to any application by any of the Secured Creditors for any claim they assert may be entitled to administrative priority under 11 U.S.C. §507(a)(2).

14.     The Columbus Landlord will look first to Crossroads and Utica for payment of the Post-Petition Rent Charges, but if Crossroads and Utica fail to pay the Columbus Landlord the Post-Petition Rent Charges within five (5) business days following such demand for payment by the Columbus Landlord, the Columbus Landlord shall have the right to seek Post-Petition Rent Charges from the Estate upon submission to the Court and approval thereafter of its application for payment of its administrative expense claim (the "**Columbus Landlord Administrative Claim**").  If the Columbus Landlord seeks payment of the Columbus Landlord Administrative Claim, the Trustee reserves the right to seek from Crossroads and Utica, in addition to the costs of obtaining such payment from Crossroads and Utica, that portion of any allowed Columbus Landlord Administrative Claim (i) allocable to the Post-Petition Rent Charges and/or (ii) reasonably allocable to the preservation and disposition of the Crossroads' and Utica's collateral. Nothing in this Stipulation and Agreed Order shall waive, restrict or impair the rights of the Trustee or any party-in-interest to object to (i) any application by the Columbus Landlord to seek payment of its Post-Petition Rent Charges (and all rents the Columbus Landlord may assert are required to be paid thereunder) and its Post-Petition attorneys' fees from and after the Petition Date in connection with the enforcement of its rights and remedies under the Columbus Lease Agreement, or (ii) any other claim the Columbus Landlord asserts may be entitled to administrative priority under 11 U.S.C. §507(a)(2).

15.    Upon entry of this Stipulation and Agreed Order, the automatic stay pursuant to 11 U.S.C. § 362 is hereby terminated as against the Columbus Landlord to permit the Columbus Landlord, without further order of this Court and without further action except as required by state law, to exercise any and all of its rights and remedies under the Columbus Lease Agreement and the Landlord Agreement, including, but not limited to the termination of the Debtor's leasehold interest, which shall be effective upon the entry of this Stipulation and Agreed Order, without further notice or action of the Columbus Landlord, whereupon the Columbus Landlord will be deemed to be in possession of the Columbus Leased Premises, and to take any and all actions it deems necessary or appropriate in connection therewith; save and except the automatic stay is not lifted to allow the Columbus Landlord to exercise any right or remedy, or take any action, against any Unencumbered Asset.  As between the Columbus Landlord, on the one hand, and Crossroads and Utica, on the other hand, nothing herein shall in any way impair, modify, amend, or alter the terms and conditions of the Landlord Agreement or Columbus Lease Agreement. As between the Columbus Landlord and the Trustee, nothing herein shall in any way impair, modify, amend, or alter the terms and conditions of the Landlord Agreement or the Columbus Lease Agreement; provided, however, notwithstanding anything to the contrary in this Stipulation and Agreed Order, the Columbus Landlord shall comply with the terms of this Stipulation and Agreed Order when exercising such rights and remedies under the Landlord Agreement or the Columbus Lease Agreement.

14

16.     The automatic stay is further lifted as to the following taxing authorities: Colorado County Central Appraisal District, Cypress-Fairbanks Independent School District, Harris County, Midland Central Appraisal District, and Midland County.

17.     The Secured Creditors agree to pay to the Trustee, for the benefit of the Estate, the sum of $40,000 (the "**Surcharge**"), in one or more installments if necessary, as the reasonable and necessary expenses of preserving the Secured Creditors' collateral or property (including the fees and expenses of the Trustee's professionals), as a surcharge pursuant to 11 U.S.C. §506 against the Crossroads' Collateral, the Utica Collateral, and the nFusion Collateral, such installment payments, if installments are necessary, to be made within fifteen calendar days after the conclusion of each liquidation or removal[4] of the Crossroads' Collateral and/or the Utica Collateral and/or the nFusion Collateral, until the Surcharge is paid in full to the Trustee; provided, however, that notwithstanding the foregoing, payment in full must be made no later than ninety (90) days after entry of this Stipulation and Agreed Order.

18.     The Secured Creditors will provide the Trustee with accountings of each disposition of the Crossroads' Collateral, the Utica Collateral, and the nFusion Collateral, respectively, and will turn over to the Trustee any excess proceeds from the disposition to the extent there are excess proceeds.  Each accounting must be provided within ten (10) business days after the conclusion of each disposition.

19.     Nothing contained in this Stipulation and Agreed Order shall restrict or impair the rights of the materials suppliers identified as American Alloy Steel, Inc., Apache Steel Works,

---

[4] The Parties anticipate that certain nFusion Collateral comprised of inventory or WIP will be repossessed by nFusion or delivered directly to the Debtors' customers in return for payment of outstanding accounts receivable.

LLC, Ryerson, Field Industries, LLC, and Pipeline Supply and Services Industrial Group, including, but not limited to, any reclamation claims that may exist. Likewise, nothing in this Stipulation and Agreed Order shall waive, restrict or impair the rights of the Trustee or any party-in-interest to object to any reclamation claim by any party, including but not limited to those listed in this paragraph.

20.    Notwithstanding anything to the contrary herein, Nnothing contained in this Stipulation and Agreed Order, or any actions taken pursuant thereto, including, but not limited to, any repossession any of the Secured Creditors' respective collateral as authorized herein, shall (i) determine, alter, impair, or otherwise terminate any ownership or special property interests of theany customers and/or suppliers of the Debtor in any of the assets claimed by Crossroads or nFusion to constitute Crossroads Collateral or the nFusion First-Priority Collateral; (ii) restrict or impair the rights of any of such customers and/or suppliers of the Debtor to assert such ownership or special property interests in, or specific rights to, the assets constituting Crossroads Collateral or nFusion First-Priority Collateral; or (iii) restrict or impair the rights of Crossroads, the Trustee, nFusion, or any party in interest to object to such asserted interests claimed by theany customers and/or suppliers, other than on the basis that any of the Secured Creditors have taken "possession" of any assets claimed by Crossroads or nFusion to constitute Crossroads Collateral or nFusion First-Priority Collateral pursuant to this Stipulation and Agreed Order.  This Court shall retain exclusive jurisdiction to decide any disputes relating to any interests asserted by any customers and/or suppliers of the Debtor in any of the assets claimed by Crossroads or nFusion to constitute Crossroads Collateral or nFusion First-Priority

Collateral. To the extent that nFusion, Crossroads, and the Trustee agree to ~~the~~any ownership or special property interest~~s~~ claimed by ~~the~~any customers and/or suppliers of the Debtor, then such customer or supplier shall, without further order of this Court, make arrangements through Crossroads to remove the applicable property from the Columbus Leased Premises, at no cost to the Estate, subject to such party's execution of an access agreement in favor of the Columbus Landlord.

21.     EP Energy & Verdun.   Upon entry of this Stipulation and Agreed Order, Crossroads, nFusion, and the Trustee, as applicable, will work in good faith with EP Energy E&P Company, LLC, f/k/a EP Energy E&P Company L.P. ("**EP Energy**") and Verdun Oil Co. ("**Verdun**" and, collectively with EP Energy and its affiliates, the "**EP Parties**") to promptly (i) locate and catalogue the assets claimed by Crossroads or nFusion to constitute Crossroads Collateral or the nFusion First-Priority Collateral which the EP Parties have paid for and assert an ownership or special property interest in and (ii) permit the EP Parties to take possession of such located and catalogued assets in accordance with paragraph 20 hereof.

22.     ~~21.~~ The fourteen-day stay imposed under Federal Rule of Bankruptcy Procedure 4001(a)(3) is hereby waived and this Stipulation and Agreed Order shall become effective on the date it is signed by the Court. Further, the Court finds that there are grounds to waive any otherwise applicable stay periods not required by state law, and this Stipulation and Agreed Order shall be immediately effective upon the entry onto the Court's docket.

23.     ~~22.~~ This Court reserves jurisdiction to enforce this Stipulation and Agreed Order.

17

**AGREED:**

| Proposed Counsel to Trustee | Counsel to Crossroads |
|---|---|
| */s/ [ ]*<br>Wayne Kitchens TBN 11541110<br>wkitchens@hwa.com<br>Heather McIntyre  TBN 24041076<br>hmcintyre@hwa.com<br>HUGHESWATTERSASKANASE, LLP<br>Total Plaza, 1201 Louisiana, 28th Floor<br>Houston, Texas 77002   Telephone:  (713) 759-0818<br>Facsimile:  (713) 759-6834 | /s/ ~~Robert P. Franke~~[ ]<br>Robert P. Franke<br>Texas Bar No. 07371200<br>Andrew G. Edson<br>Texas Bar No. 24076364<br>CLARK HILL PLC<br>901 Main Street, Suite 600<br>Dallas, TX 75202<br>bfranke@clarkhill.com<br>aedson@clarkhill.com |
| **Counsel to Columbus Landlord** | **Counsel to Utica** |
| */s/ [ ]*<br>David Weitman<br>K&L Gates LLP<br>1717 Main Street, Suite 2800<br>Dallas, Texas 75201<br>Phone:  214.939.5427<br>Fax: 214.939.5849<br>Email: david.weitman@klgates.com | */s/*<br>Carolyn J. Johnsen<br>Dickinson Wright PLLC<br>1850 North Central Avenue  Suite 1400<br>Phoenix, Arizona  85004<br>cjjohnsen@dickinsonwright.com |
| | **Counsel to nFusion**<br>/s/<br>James M. (Jim) Schober<br>Schober & Schober, PC<br>1611 Nueces Street<br>Austin, Texas 78701<br>jim@schoberlegal.com |

**AGREED SOLELY FOR INDEMNIFICATION AND TRANZON ACCESS AGREEMENT, AND NOT OTHERWISE:**

Tranzon Asset Advisors of Texas, LLC

By:  */s/ [ ]*
Name: Kelly Toney
Title: Executive Vice-President

**Signed:**

_____
**CHRISTOPHER M. LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

4892-3626-1493 v1 [99998-2606]

19

**EXHIBIT "A"**

August __, 2023

VIA E-MAIL AND U.S. MAIL: david.weitman@klgates.com

David Weitman, Esq.
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201

RE:     KW International, LLC
          200 Texas Avenue
          Columbus, Texas 78934

Dear David:

Pursuant to the concerns of your client, 200 Texas LLC (the "Landlord"), as landlord of the premises at 200 Texas Avenue, Columbus, Texas 78934 (the "Premises") leased to KW International, LLC (the "Debtor"), Tranzon Asset Advisors of Texas, LLC, 945 McKinney St., Suite 13384, Houston, Texas 77002-6308 ("Tranzon"), as evidenced by its signature below, agrees and represents, warrants, and covenants to the Landlord as follows:

1.   Tranzon is an auctioneer that will soon be retained by the Chapter 7 Trustee (the "Chapter 7 Trustee") for the bankruptcy estate of KW International, LLC, and among its responsibilities will be to remove certain Unencumbered Assets (as defined in that certain Stipulation and Agreed Order Regarding Proceeding In This Case and Relief From the Automatic Stay (the "Stipulation and Agreed Order"), to be entered in the bankruptcy case, styled "In re: KW International, LLC, Debtor"; Case No. 23-90708, Chapter 7, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

2.   This agreement shall be subject to the terms and conditions set forth in the Stipulation and Agreed Order.

3.   Tranzon will promptly notify the Landlord and its counsel following Tranzon's retention by the Chapter 7 Trustee and will confirm as follows:   (a) with respect to the repossession, delivery, removal or other physical relocation of the Unencumbered Assets, Tranzon will work exclusively through Crossroads Financing, LLC ("Crossroads") to coordinate with Crossroads and identify and remove the Unencumbered Assets from the Premises.

20

4. Tranzon agrees to, at its own expense, immediately repair any damage, impact, or disturbance to the Premises directly or indirectly caused by any acts or omissions of Tranzon or its agents, representatives, independent contractors, invitees, or employees and to restore the Premises to the condition it was in immediately prior to Tranzon's access to the Premises. Tranzon will immediately inform the Landlord and its counsel if it discovers or creates a condition on the Premises that Tranzon reasonably believes will give rise to a liability or claim for damages against the Landlord.

5. Tranzon shall indemnify, defend, and hold the Landlord and its employees, tenants, invitees, contractors, and agents harmless from any loss, cost, expense, damage, liability, action, claim, or cause of action, including without limitation, reasonable attorneys' fees directly or indirectly arising from, relating to, or in connection with (i) any physical property damage caused by Tranzon or its agents, representatives, independent contractors, invitees, or employees in removing the Collateral from the Premises; (ii) any injury to persons caused by Tranzon or its agents, representatives, independent contractors, invitees, or employees in the course of the removal of the Unencumbered Assets from the Premises; or (iii) the removal of the Unencumbered Assets or Tranzon's access to the Premises under this agreement or otherwise.

6. Tranzon agrees that it carries commercial general liability insurance coverage for bodily injury and property damage with a combined single limit of not less than one million dollars ($1,000,000) per occurrence with a two million dollar ($2,000,000) aggregate limit, excess umbrella liability insurance in the amount of two million dollars ($2,000,000), and a contractual liability endorsement that insures the above indemnity obligations. Tranzon will provide the Landlord with satisfactory certificates of insurance listing the Landlord as an additional insured on the policy, evidencing that Tranzon and its agents, representatives, independent contractors, invitees, and employees have insurance in full force and effect meeting these requirements. As a condition to the right of access granted under this agreement, Tranzon covenants and agrees to cause its agents, representatives, independent contractors, invitees, and employees to maintain these coverages at all times in connection with this agreement, with all coverage written on a "claims-made" basis kept in force, either by renewal or the purchase of an extended reporting period, for a minimum period of one (1) year following Tranzon's last access to the Premises. Nothing herein shall in any way limit Tranzon's liability under this agreement or otherwise.

7. Tranzon acknowledges that the below-named company officer has full authority to execute this agreement for Tranzon and that this agreement is binding on Tranzon.

8. In consideration of the representations, warranties, and covenants of Tranzon in this agreement in favor of the Landlord, the Landlord consents to Tranzon's limited access to the Premises as provided herein and the removal of the Collateral from the Premises by Crossroads subject to the terms and conditions of the Landlord Agreement; provided,

however, such consent is subject to the Landlord's receipt from Tranzon of (i) evidence of stay relief, (ii) the certificate of insurance described above, and (iii) the confirmation and acknowledgement of Crossroads to the arrangements set forth herein, as evidenced by the acknowledgement of Crossroads set forth below. Such arrangements for the removal of the Collateral shall be made directly between Crossroads and the Landlord pursuant to the Landlord Agreement.

9. The parties' notice addresses under this agreement are as follows:

| **The Landlord**: | **Tranzon:** |
|---|---|
| 200 Texas LLC | Tranzon Asset Advisors of Texas, LLC |
| Attn: David Weitman, Esq. | 945 McKinney St., Suite 13384 |
| K&L Gates LLP | Houston, Texas 77002-6308 |
| 1717 Main Street, Suite 2800 | Attention: Kelly Toney, Executive Vice |
| Dallas, Texas 75201 | President |
| david.weitman@klgates.com | ktoney@tranzon.com |

With a copy to:
200 Texas LLC
c/o Brennan Investment Group, LLC
10275 W. Higgins Road, Suite 810
Rosemont, Illinois 60018
Attention: Dean Farley

This letter agreement shall be effective following the execution of same by all of the parties hereto.

Very truly yours,

TRANZON ASSET ADVISORS OF TEXAS, LLC

_____
Name: Kelly Toney
Title: Executive Vice-President

506934699.310 1205615-00006

WEIL:\99311509\4\42780.0005

AGREED TO:

TRANZON ASSET ADVISORS OF TEXAS,  200 TEXAS LLC
LLC

By:_____

Its:_____

Dated:_____

By:_____

Its:_____

Dated:_____

---

AGREED TO:

CROSSROADS FINANCING, LLC

By:_____

Its:_____

Dated:_____

23